UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOE HAND PROMOTIONS, INC.,
as Broadcast Licensee of the
August 9, 2008, UFC #87 Program,

    Plaintiff,

 v.                  Case No. 09-C-612

GARY LEE EWER, individually and as officer,
director, shareholder and/or principle of
ELECTRIC CITY BREWING COMPANY, INC.,
d/b/a THE TAP HOUSE, a/k/a TAP HAUS,
a/k/a TAP HAUS GRILL, a/k/a THE TAP HAUS,
and ELECTRIC CITY BREWING COMPANY, INC.,
d/b/a THE TAP HOUSE, a/k/a TAP HAUS,
a/k/a TAP HAUS GRILL, a/k/a THE TAP HAUS,

    Defendants.

---

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

---

  Plaintiff Joe Hand Promotions, Inc. brought this action alleging that defendants Gary Lee Ewer individually and as officer, director, shareholder and/or principle of Electric City Brewing Company, Inc., d/b/a The Tap House ("The Tap Haus"), and The Tap Haus knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting the UFC # 87 fight on August 9, 2008. Jurisdiction arises under 28 U.S.C. § 1331. Defendants have failed to appear in this action. The Clerk entered default against the defendants on September 15, 2009. This matter is before me on plaintiff's motion for entry of default judgment and award of damages, attorney's fees and costs. (Doc. # 7.)

**Background**

The background facts of this case, except for those relating to damages, are taken from the allegations of plaintiff's complaint and are deemed admitted as a consequence of defendants' default. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). Plaintiff has established that it owned the distribution rights to the UFC # 87 fight program, which was broadcast by closed circuit television or by encrypted satellite signal. Plaintiff then entered into contracts with commercial establishments in Wisconsin to enable them to publicly exhibit the program to their patrons.

In an effort to ensure that only those establishments that have paid to exhibit its programming actually gain access to the program, plaintiff dispatched auditors to various establishments to investigate whether the program was displayed without authorization. One of plaintiff's auditors went to The Tap Haus at 8:35 p.m. on August 9, 2008. (Doc. # 8 at 25.) The auditor wore a concealed video camera and observed seven television sets which were displaying the UFC #87 program. The auditor did not pay a cover charge to enter the bar, and he counted approximately 29 individuals in the facility.

**Liability**

Plaintiff alleges that defendants violated 47 U.S.C. §§ 553 and 605, but without the benefit of discovery or an admission from defendants plaintiff cannot determine exactly how defendants intercepted its signal (i.e., via coaxial cable or satellite). As plaintiff acknowledges, it may not simultaneously pursue relief under §§ 553 and 605, because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553

governs the interception of cable television programing traveling over a cable network). Plaintiff requests relief under § 605, but cannot demonstrate conclusively that defendants intercepted a satellite signal on August 9, 2008. Nevertheless, I conclude that the allegations of the complaint and plaintiff's papers in support of the motion provide sufficient basis to find defendants liable for a violation of § 605.[1]

As a result of defendants' default, they are deemed to have unlawfully intercepted the program and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *see also Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). "'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007) (quoting *J&J Sports Prods., Inc. v. Drake*, No. 06cv246 (ILG)(RML), 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 20006)).

Personal liability against Defendant Ewer is appropriate in this case based upon the allegations of the complaint. The complaint alleges upon information and belief that Ewer was the

---

[1] For example, the auditor observed that there was a satellite dish on the roof of The Tap Haus.

3

individual with supervisory capacity and control over the activities occurring at The Tap Haus on August 9, 2008, and that he received financial benefit from the operations of the Tap Haus on that night. (Compl. ¶¶ 8-9.) By his default Ewer also forfeits his ability to contest his personal liability for the violation alleged by plaintiff, as Ewer is deemed to have had the necessary supervisory control over the interception and received financial benefit from the same. *See J & J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498 (S.D.N.Y. 2008) (individual who was officer, director, shareholder, and/or principal of corporation that operated bar was liable in her individual capacity under § 605 for bar's unlawful interception and exhibition of pay-per-view boxing match, where she had supervisory control over interception, and received financial benefit therefrom).

**Damages**

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(I). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision*, 146 F. Supp. 2d at 959-61. Finally, under § 605(e)(3)(B)(iii), plaintiff has requested an award of attorneys' fees and costs in the amount of $1,372.

I first turn to the question of what amount of statutory damages is appropriate in this case. Judge Adelman has noted the various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

4

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y.1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489-90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y.1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Kingston Pay-Per-View*, 146 F. Supp. 2d at 960. The court in *Kingston* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, it is unclear what plaintiff would charge to permit the defendants to show its UFC program, so the Court must consider an alternate means of calculating damages. As another court has noted, where the number of patrons at a defendant's establishment is known, most courts award § 605 damages based upon the number of patrons. *Joe Hand Promotions, Inc. v. Kaczmar*, No. 08 C 2910, 2008 WL 4776365, *2 (N.D. Ill. Oct. 29, 2008) (basing award on baseline of $55 per patron) (quotation and citation omitted). Accordingly, the Court will award statutory damages of $55 per patron, meaning plaintiff is entitled to $1,595 in statutory damages based upon the auditor's observation of 29 individuals at The Tap Haus.

As I have already concluded that defendants' violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not

5

exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Kaczmar*, 2008 WL 4776365, at *2 (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id*. (citations omitted).

There is nothing to suggest that the defendants have pirated in the past, as it appears that in the past defendants had legitimately ordered other UFC programming through DirecTV. Also missing from the record is any indication of the extent of any ill-gotten gains by the defendants or the actual damages suffered by plaintiff for this act of piracy.[2] Further, defendants do not appear to have advertised the event and the auditor's affidavit indicates he was not required to pay a cover charge. Thus, all of these factors point toward a lower amount of enhanced damages. The Tap Haus did not appear to be anywhere near its capacity during the auditor's visit, suggesting that defendants were not profiting hand over fist as a result of their piracy of the UFC #87 program. In order to deter future violations, the Court will impose enhanced damages of $4,785, applying a multiplier of three times the amount of the $1,595 in statutory damages.

---

[2]Plaintiff merely notes it believes that "such acts of privacy have cost us millions of dollars in the last few years while at the same time causing a reduction in our lawful business resulting from the perceived lack of consequence for such unlawful interception." (Pl.'s Aff. ¶ 15.)

6

Case 2:09-cv-00612-WCG    Filed 10/08/09    Page 6 of 7    Document 13

**Costs and Attorneys' Fees**

Finally, I turn to plaintiff's request that I award $1,372 in costs and attorneys' fees. Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $822 in attorneys' fees and $550 in costs. Plaintiff's counsel has submitted an affidavit detailing 3.51 attorney hours at a rate of $200 per hour and 1.6 paralegal hours at a rate of $75.00 per hour. (Attorney's Aff. of Costs and Fees.) Plaintiff lists $350 for filing fees and $200 for service of process. Plaintiff's request is reasonable, so the Court will award plaintiff $1,372 in costs and attorneys' fees.

For the reasons stated above, the Court grants plaintiff's motion for judgment by default against the defendants in the amount of $7,752.00. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   8th   day of October, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
